UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RICHARD SHAPIRO,

    Petitioner,

    v.

SHEILA MITCHELL,
Chief Probation Officer of
Santa Clara County,

    Respondent.

No. C 07-555 MHP (pr)

**ORDER DENYING HABEAS PETITION**

## INTRODUCTION

Richard Shapiro filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254. The matter is now before the court for consideration of the merits of the petition. For the reasons discussed below, the petition will be denied.

## BACKGROUND

Shapiro challenges his misdemeanor convictions for resisting arrest, lewd conduct, and possession of weapons (viz., a billy club and tear gas). The convictions were based on his activities in a public park in Sunnyvale.

On the afternoon of January 14, 2004, Sunnyvale police officer Tony Medina was on patrol in a marked police sports utility vehicle at Baylands Park. He noticed an illegally parked car and drove to it to issue a parking citation. As he approached, officer Medina noticed a pink towel draped over the steering wheel, and then saw that the towel was moving up and down in a rapid manner, which led him to believe someone was masturbating under the towel. Medina exited his vehicle and went to the car, where he saw Shapiro reclining in the driver's seat, with the towel draped over the steering wheel and covering his lap to his

1  waist. Officer Medina said, "good afternoon, sir," to which Shapiro responded, "fuck you."
2  RT 46. Shapiro remained combative throughout the encounter. Shapiro refused to move the
3  towel, so officer Medina removed it because he could not see Shapiro's hands or what was
4  under the towel. The fly on Shapiro's pants was open and he was not wearing underwear; his
5  penis was partially exposed but not erect. Shapiro continued to be combative, failed to
6  follow the officer's instructions, and reached into other parts of the car causing Medina to be
7  concerned for his safety. Eventually, Medina pulled Shapiro from the car and tried to
8  handcuff him. Shapiro kept spinning around trying to face officer Medina, but Medina
9  eventually put the other handcuff on, cutting his thumb in the process. Sunnyvale police
10 officer Scott Cortese arrived as a backup for officer Medina. Officer Cortese witnessed
11 Shapiro struggling and screaming profanities, and saw Shapiro's penis "hanging out" of his
12 unzipped pants. RT 141. Officer Medina searched Shapiro's car after the arrest and found
13 body lotion next to the driver's seat, bear repellant pepper spray under the driver's seat, and
14 two billy clubs on the floorboard of the passenger seat. At the police station, Shapiro
15 continued yelling insults at officer Medina, although he eventually calmed down.

16        At trial, in addition to evidence regarding the foregoing encounter with the Sunnyvale
17 police, the prosecution presented evidence of a similar incident for which Shapiro was <u>not</u>
18 arrested. On August 31, 2004, the Mountain View police responded to a complaint from a
19 driver who thought she saw a person masturbating in a car parked near a park in Mountain
20 View. Mountain View police officer Post approached the car and saw Shapiro reclining in
21 the driver's seat with a towel over his lap and with his hands under the towel. Shapiro
22 became upset and yelled that the officer was harassing him.

23        The defense presented evidence that included Shapiro's fiance's testimony that they
24 sometimes did outdoor activities in areas where there were bears; evidence from several
25 people about Shapiro's good character; evidence about Shapiro's interest in police oversight;
26 evidence that a ranger had seen Shapiro occasionally in Baylands Park sleeping or resting;
27 and evidence that the same ranger saw a police officer standing by Shapiro's car on January
28 17, 2004, at which time Shapiro was not yelling obscenities at the officer.

2

Following a jury trial in Santa Clara County, Shapiro was convicted of four misdemeanors: resisting arrest, lewd conduct, possession of a weapon (viz., a billy club), and possession of a weapon (viz., tear gas).  See Cal. Penal Code §§ 148, 647(a), 12020.  On March 10, 2005, Shapiro was sentenced to 50 days in county jail and three years of probation.  Shapiro appealed.  His conviction was affirmed by the Appellate Division of the Santa Clara County Superior Court and that same court later denied certification of his case to the California Court of Appeal.  Shapiro also filed unsuccessful state habeas petitions in the Santa Clara County Superior Court, the California Court of Appeal, and the California Supreme Court.

Shapiro then filed this action.  In his federal habeas petition, Shapiro claimed that his right to due process was violated by the admission of the other bad acts evidence and that he had received ineffective assistance from his trial counsel.   The court issued an order to show cause why the petition should not be granted.  After filing and withdrawing a motion to dismiss, respondent filed an answer and Shapiro filed a traverse.

In his answer, respondent urges that the court lacks jurisdiction because Shapiro had failed to name a proper respondent.  Respondent is correct that a proper respondent was not named, so the court now sua sponte substitutes Sheila Mitchell, Chief Probation Officer of Santa Clara County, in place of the People of the State of California as the nominal respondent.  That jurisdictional problem having been resolved, the court now turns to the merits of the petition.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331.  This action is in the proper venue because the challenged conviction occurred in Santa Clara County, California, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state

judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court.  See 28 U.S.C. § 2254(b), (c).  Respondent does not contend that state court remedies were not exhausted for the claims in the petition.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  Id. at 409.

Although there apparently was a reasoned decision on his appeal to the Appellate

1  Division of the Santa Clara County Superior Court, inexplicably neither petitioner nor
2  respondent bothered to file a copy of it in the federal habeas action.  Due to its absence, this
3  court cannot determine whether it even addressed any of the federal constitutional claims.
4  This court reviews the record to determine whether the state court's rejection of the claims
5  was objectively reasonable.  See Plascencia v. Alameda, 467 F.3d 1190, 1197-98 (9th Cir.
6  2006).

## DISCUSSION

A.    Admission of Evidence of August 29, 2004 Incident

Shapiro contends that the trial court improperly admitted evidence about the uncharged incident on August 29, 2004, in which Shapiro was approached by the Mountain View police after a motorist complained that he appeared to be masturbating in his car parked near a park.  Laurie Biros testified that, while driving in her car, she saw Shapiro reclining in his parked car with his feet up on the dashboard and his arm moving in an up-and-down motion. RT 165-66.  Mountain View police officer Post testified that she saw Shapiro reclining in his car with his hand under a towel that was draped over his lap.  RT 171.

The prosecution moved in limine to admit the evidence of the August 29 incident as relevant to the issue of intent on the lewd conduct charge.  Defense counsel objected to the admission of the evidence, but Shapiro interrupted and demanded that all the evidence be admitted. See RT 5 ("I want everything – this is what I said: I want everything included"), id. ("I want every subsequent action and word of mine in").  When the court asked, "your attorney is objecting to it, and you feel the opposite; you want it in?" Shapiro responded: "correct."  RT 6.  Notwithstanding Shapiro's demand that the evidence be admitted, the trial court considered and rejected defense counsel's argument that the evidence should be excluded as more prejudicial than probative.  The court found the evidence admissible under California Evidence Code § 1101(b) and granted the prosecution's motion in limine.  RT 16.  The court explained: "The court sees that there are a number of similarities: parked vehicle; a towel or some other type of material draping him, possibly the same one, with the same type

of movement or motion. There are enough similarities, and if the issue of intent is disputed by defense, then I can see where it's relevant under 1101(b) to the issue of intent." RT 12. Defense counsel stated that Shapiro's defense was that rather than acting with an intent to sexually gratify himself in either the charged incident or the August 29 incident, Shapiro had acted with an intent to "provoke an altercation with the police." RT 12. The court explained that the August 29 incident evidence was admissible because intent was at issue "and specifically if defense is saying the intent on the subsequent occasion was completely unrelated to the issue of sexual gratification or arousal, then it surely goes to intent on the offense here and on that occasion." RT 16. The court also emphasized that it would not allow the case to turn into a trial of police practices across the country, but would permit limited evidence that Shapiro had engaged in numerous acts such as picketing, protesting, and speaking at city council meetings to protest police practices.

The state court's evidentiary ruling may be considered in a federal habeas action only if it violated federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process. See Pulley v. Harris, 465 U.S. 37, 41 (1984); Henry v. Keenan, 197 F.3d 1021, 1031 (9th Cir. 1999), cert. denied, 528 U.S. 1198 (2000); Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995). Failure to comply with state rules of evidence is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds. See Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991). Only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process. See id. at 920.

The admission of evidence about the August 29 incident did not violate due process because there was a permissible inference that the jury could draw from it relating to Shapiro's intent. To find Shapiro guilty on the lewd conduct charge, the jury had to find that he had touched his genitals "with the specific intent to sexually arouse, gratify, annoy, or offend." RT 268; CALJIC 16.400. Shapiro's intent was at issue and had not been conceded. See RT 12. The similarities between the two situations and his reported conduct on those

two occasions – reclining in a parked vehicle with a towel draped over his lap and making similar motions under the towel – tended to show he was acting with the intent to sexually gratify himself on both occasions. The jury was instructed that the evidence could not be used to show disposition, and could only be considered as to the issue of intent. RT 257-258. The admission of the evidence of the August 29 incident did not violate due process. There also was no prosecutorial misconduct in introducing this admissible evidence. See Darden v. Wainwright, 477 U.S. 168, 181 (1986) (habeas relief available if prosecutor's actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process").

Shapiro also makes a separate argument (discussed in the next section) that at first blush appears to contradict this one. Specifically, he argues that his attorney was ineffective in <u>not</u> introducing Shapiro's tape-recording of the August 29 incident. Although Shapiro did not articulate his point well, he apparently wanted the jury to hear nothing about the August 29 incident unless it also heard the taped version of that incident   Like his argument, this court's conclusions might appear at first blush to be contradictory but ultimately can be harmonized in that admission of the evidence of the August 29 incident did not violate due process because it was relevant to intent, but that his attorney did not provide ineffective assistance in not introducing the tape recording of that incident because of the damaging statements Shapiro made on that tape (discussed in the next section).

B.    <u>Ineffective Assistance of Counsel Claims</u>

Shapiro contends he received ineffective assistance of counsel. He argues that counsel was ineffective in that he failed to present his tape-recording and transcript of the August 29 incident, failed to object to hearsay on the bear repellant cannister, failed to challenge the substance of the police report, stipulated to the weapons charge, and failed to present a more rigorous defense to the lewd conduct charge.

The Sixth Amendment to the U.S. Constitution guarantees not only assistance, but effective assistance, of counsel. See Strickland v. Washington, 466 U.S. 668, 686 (1984). The purpose of the right is to ensure a fair trial, and the benchmark for judging any claim of

7

ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. To prevail on an ineffective assistance of counsel claim, a habeas petitioner must show that (1) counsel's performance was "deficient," i.e., his "representation fell below an objective standard of reasonableness" under prevailing professional norms, id. at 687-88, and (2) prejudice flowed from counsel's performance, i.e., that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. See id. at 691-94. The relevant inquiry under Strickland is not what defense counsel could have done, but rather whether his choices were reasonable. See Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998), cert. denied, 525 U.S. 1159 (1999). A lawyer need not file a motion or make an objection that he knows to be meritless on the facts and the law. See Wilson v. Henry, 185 F.3d 986, 990 (9th Cir. 1999); Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996), cert. denied, 519 U.S. 1142 (1997) (failure to take futile action is not deficient performance).

      Shapiro urges that his counsel's failings amounted to Cronic error, such that he is not required to show prejudice. Cronic error exists when counsel's performance amounts to a failure to "subject the prosecution's case to meaningful adversarial testing." See United States v. Cronic, 466 U.S. 648, 658-60 (1984) (providing for presumption of prejudice in certain situations, such as where counsel fails to meaningfully test prosecution's case). The Supreme Court has emphasized, however, that the Cronic standard is a "narrow exception to Strickland's holding" and is reserved for those situations in which counsel has entirely failed to function as the client's advocate. Florida v. Nixon, 543 U.S. 175, 190 (2004) (refusing to apply Cronic standard even where counsel had advised defendant to concede guilt in capital case); see Bell v. Cone, 535 U.S. 685, 696-97 (2002) ("[t]he failure to adduce mitigating evidence and the waiver of closing argument [in capital sentencing phase] . . . are plainly of the same ilk as other specific attorney errors we have held subject to Strickland's performance and prejudice components"). Here, counsel's actions came nowhere near to being a complete failure to test the prosecution's case. The court therefore now considers the

8

asserted errors by counsel and evaluates them under the Strickland standard.

The tape and transcript of the August 29 incident: Shapiro argues that counsel should have introduced a tape-recording and transcript of the recording of the August 29 encounter, i.e., the uncharged second incident with the Mountain View police.  Shapiro states that when he brought the materials to counsel in the middle of trial, counsel told him they were not necessary.  Counsel's failure to present the tape/transcript did not amount to deficient performance and resulted in no prejudice, even assuming arguendo that the evidence would have been admissible.  The tape/transcript was simply too damaging for Shapiro.

As in the charged incident, Shapiro was not cooperative with police from the outset in the second incident, although the latter did not appear to be as acrimonious as the first incident.  Had the tape/transcript of the second incident been admitted, it would have made more believable officer Medina's testimony that Shapiro was immediately combative and verbally abusive in the first incident.  A jury might find it hard to believe that the first words out of a driver's mouth were "fuck you" in response to an officer saying "good afternoon sir," while a jury hearing the tape or reading the transcript of the second encounter would have little trouble believing that Shapiro said exactly that.  Having the jury believe that Shapiro was immediately combative and verbally abusive would have damaged his prospects for acquittal on the resisting arrest charge.  Any doubts the jury might have had about the accuracy of officer Medina's description about Shapiro's combative nature and his movements would have been eliminated.  The transcript also shows a person overreacting in the extreme: Shapiro stated that it "was about as vile as I know a human being to be" when the officer asked a question after he told her he would not answer questions but continued to talk, Transcript, p. 4, that it was "heinous" for the police to be able to stop him based on an anonymous call, id. at 5, that if he was the officer he would have "tremendous shame" for stopping him, id. at 6, that "this is not the Soviet Union" and "You don't go to calls simply because someone looks suspicious.  That's preposterous.  It's ignorant to the umpth degree," id.  And those comments were just the prelude to his long harangue about police practices.  See id. at 7.  Reading that transcript would have left the jury with a firm impression that this

9

1 was just the kind of person who would do what Medina said he did vis-a-vis resisting arrest.

2 Furthermore, Shapiro made several statements on the tape/transcript that could be understood as (or easily be argued to be) admissions that he was masturbating. He seemed to take the position that the complainant and the police were just uptight. Before the police officer mentioned why Shapiro had been approached (other than that he had been reported as laying in the car), Shapiro stated: "Yeah, but that's their sick perception." Transcript, p. 1. Later in the encounter (and also before the police described the way in which he was suspicious), Shapiro stated: "You do not have probable cause to even detain me. OK. You have s-some ignorant, ahh-resident that sees somebody that doesn't necessarily fit their, their notation of what normal is, or what–what-ahh-what just being alive is, OK." Id. at 4. Later in the conversation, he made statements that he had a towel over him and implied that his hands were moving as he explained that he could have been doing "a million things" such as cleaning a gun. Id. at 7. He also suggested that as long as he was alone, the police should have left him alone. Id. at 8 ("Why didn't your office come by, maybe peek in the car, see I'm laying down, with a towel over me, listening to the radio, and say: I don't see a kid in there being molested, I don't see any drugs being taken, I don't see–sen-and just–just go.") Shapiro even described the charged (i.e., first) incident to the police officer in the second incident, explaining that he had been going to the Bayland Park for five years and doing the same thing. Id. at 12. He elaborated: "I'm sitting there, in the same place I always go, reclined with a towel over me, 'cause I always have that for warmth and I'm–always have my pants unbuckled to, just because I don't like sitting in my car with a buckled pant. And a-a-a cop comes over. Ahh–just rushes right over to me and he says—ahh-'what are you masturbating, what are ya doing drugs–ahh–what are you loi-loitering?' All of this kind of nonsense. And–but that–that's almost neither here nor there 'cause he could say well, from a distance, that's what it appeared to me. . . . I think that's kind of a sickness that he has in his own head. But he could have actually seen that and that's fine." Id. at 12. That transcript was far more damaging than helpful with respect to the lewd conduct charge. The transcript would have corroborated much of officer Medina's testimony and made all of it even more

10

believable.  Shapiro admitted parallels between the two incidents, admitted having a towel draped over his lap area, essentially admitted that there was movement under the towel, and arguably thought that he could do anything as long as he was alone.  The defendant's own admissions in that tape would have strengthened the prosecutor's case considerably as they confirmed so many details that defense counsel otherwise could have called into question– e.g., defense counsel's prodding of officer Medina's ability to observe in an effort to raise doubt that Shapiro was masturbating would have been greatly undermined by offering a transcript in which Shapiro himself admitted many of the details that led to officer Medina's impression that he was masturbating.

Shapiro does not show anything on the tape/transcript that was so helpful to his case that it outweighed the tremendous negative impact it would have had.  He argues that the tape/transcript would have shown that his first words in the second encounter were, "'what's going on?'" thus "implying [his] first instinct was to help the police." 7/4/07 letter brief, p. 1. No jury hearing that recording would have seriously believed he wanted to be a citizen-helper under the circumstances.  Within seconds, Shapiro was asking why she thought he was doing something illegal and telling her he had a tape recorder to record police.  In any event, he does not explain why establishing an initial desire to help would have made any difference to defending the charges against him, especially in light of his other damaging statements during the conversation.  To the extent Shapiro wanted the tape/transcript admitted so he could further his goal of putting police practices on trial, the trial judge had already made it clear that would not be tolerated, see RT 8, and counsel knew that efforts in this direction were certain to meet with failure.

Defense counsel wisely chose not to present the tape and transcript to the jury. Counsel's choice not to help the prosecution prove its case with this evidence was not deficient performance and resulted in no prejudice to Shapiro.  This claim fails on both prongs of the Strickland test.

The bear repellant cannister:  Shapiro next argues that counsel was ineffective in failing to object to the hearsay evidence on the cannister that was the basis for the charge of

11

possession of tear gas. This claim fails on both prongs of the Strickland test.

Counsel needed to rely on the writing to the cannister to move to dismiss the charge and could not have done so if it had been excluded. At the close of the prosecution's case, defense counsel moved to dismiss the charge of possession of tear gas for insufficient evidence. See Cal. Penal Code § 1118.1. Defense counsel argued that Penal Code § 12401 defined the prohibited tear gas as not including substances registered as certain poisons under the California Agricultural Code that were not intended to produce discomfort or injury to human beings and that the prosecutor had not proven the contents of the cannister. The trial court denied the motion to dismiss, and stated that the jury could read the label of the cannister that was in evidence and could draw its own conclusion about whether it met the requirements for tear gas. Defense counsel thus did challenge the bear repellant as not being prohibited tear gas because it was not intended to be used on people, and needed to rely on the writing on the cannister for that point. It was not deficient performance for counsel to not make an evidentiary objection that would (if successful) have precluded him from arguing for dismissal of the charge. Further, even if the writing on the cannister was excluded as hearsay, the jury still had other evidence on which to base its decision that the item was tear gas. Officer Medina identified the can as "bear repellant/capsicum spray," RT 60, and officer Cortese identified the can as a "can of bear repellant kind of pepper spray," RT 141. Further, petitioner does not dispute respondent's point that, if defense counsel had objected, the prosecutor could have found alternate evidence about the contents of the cannister and that would have precluded any possibility that the defense motion to dismiss for insufficient evidence would be granted. Shapiro has not shown deficient performance or prejudice with regard to the failure to make the hearsay challenge to the bear repellant cannister.

Other deficiencies: Shapiro argues that counsel failed to challenge the substance of the police report, failed to present a more rigorous defense of the lewd conduct charge, and stipulated to the weapons charge. However, he fails to provide any specifics to back up these generalities. The record plainly shows that counsel did challenge the police report when he cross-examined officer Medina. Similarly, the record plainly shows that counsel vigorously

12

challenged the lewd conduct charges, as he cross-examined both officers Medina and Post with regard to their observations, and cross-examined Laurie Biros about her complaint that had prompted officer Post to contact him in the second incident.  With regard to the allegation that he improperly stipulated to the weapons charges, he does not show where that stipulation was made.  The record shows that counsel argued for dismissal of the tear gas charge, RT 181-183, which is inconsistent with stipulating to the charge.  As to the billy club charge, Shapiro does not identify any defense that existed that was not pursued with regard to the weapons found in his car when he was arrested.  Due to the lack of factual support for his conclusory allegations, these claims fail on both prongs of the Strickland test, i.e., there is no basis on which to find either deficient performance or prejudice.

## CONCLUSION

The petition for writ of habeas corpus is DENIED on the merits.  The motion for an expedited decision is DENIED as moot.  (Docket # 11.)

The clerk shall close the file.

IT IS SO ORDERED.

DATED: January 20, 2009

Marilyn Hall Patel
United States District Judge

13